Our next case for argument is 24-1893, Network-1 Technologies v. Google. Good morning, Your Honor, and may it please the Court, Brian Liddell for the appellant, Network-1. The district court here erred in several ways. I'd like to start with the summary judgment of non-infringement, where the district court very clearly, rather than applying the Supreme Court, and this court's many precedents about drawing all inferences in favor of the non-moving party, here the district court very clearly looked at the evidence through a jaundiced eye of trying to find reasons to discount or disregard or just ignore evidence that was inconvenient for the position that was asserted in summary judgment. That's it. I haven't got a minute on characterizations. How about you jump to where the evidence is that created a question of fact that should have precluded summary judgment on the each issue. Sure. So, as noted in the briefs, there are two distinct systems, two versions of Google's accused system. The first, which I'll address, is what's referred to as the LSH system. LSH stands for locality-sensitive hashing. It's a particular type of search system. And one of the clearest pieces of evidence on that was a series of academic papers and testimony by a Google engineer, Dr. Belugia, who explained in an academic paper, and this is a quote, LSH and other hash functions are sub-linear in the number of elements examined compared to the size of the data set. That's at page 9716 of the appendix. That's a statement about all LSH systems. It's not limited to a particular version or a particular flavor. It's about all of them. He had more comments in another academic paper to the same effect about the fact that when the database is increased by 50 percent, we see that we can have a sub-layer computation increase. That's at page 9702 of the appendix. He gave testimony in deposition confirming that understanding at pages 7362 of the appendix, 7404 to 7405 of his deposition. Now, the district court, rather than accepting the very reasonable, and indeed we submit only reasonable evidence or inference from that evidence, that this is a characterization of all LSH systems, the district court essentially said, well, that might not be about the implemented version that Google has, and so as a matter of law, I'm going to say that the system is not sub-linear. And this wasn't just a failure to consider the evidence. It's fundamentally just a factually wrong conclusion. In preparing for today's argument, I actually did something that I couldn't have done six years ago when the summary judgment was being briefed. I asked Google's AI, is an LSH search sub-linear? And it told me, yes, this is sub-linear. It actually said that, yeah. So the analysis, wow. Like, wow. So you think we're going to take into account brand new evidence that you did a search, not part of the record, it was a Google product, that, wow. It's indicative of, but Your Honor, it's, the point is that the evidence was very consistent that this is a property of these searches, and the district court chose to disregard that or find a reason to say that it was something different, that it was somehow potentially not connected. That may be an influence that Google can argue to a jury should be drawn from the evidence. But it's not the only possibility. Let me ask you about non-exhaustive. We sort of exhausted the first issue. So let me ask you about non-exhaustive. This was not in the original claim, that term. That's correct, Your Honor. It wasn't in the patent at all, right? That's correct, the term. This was added to a very prior lot of established patentability, and if so, shouldn't something that serves that purpose be clear? Clearly, you were doing things with non-exhaustive means. Well, I think it was added because it correctly reflected the discussion and the specification of the invention and using a kind of search that doesn't look at every possible thing in the data set as compared to a search that does exhaustively look at everything in the data set. Okay, so we've got to break this down. I don't think that's what you've ever said. Exhaustive means that you have to look at every single thing in the data set. I could be wrong, but I'm pretty sure your version of exhaustive versus non-exhaustive turned on a linear approach that begins with the first entry of the data set and ends when you have a perfect match. That would not require looking at every single thing in the data set, but I think you nonetheless say that's exhaustive. Am I misunderstanding? It would help me to understand what you're saying exhaustive means because I understood your patent to say exhaustive meant at column 9 and column 22 that you take a linear approach, like if we're talking about a dictionary, you start with the word aardvark and you keep going until you hit the word ringer and then you stop. That does not mean you looked at any of the words that came after the word ringer, but that's still exhaustive. That's what I thought your patent defined it as, which is not what you just said. Well, I think that's close and our construction... Which part's close, the patent or you? Well, I think they're more similar than perhaps you're suggesting, Your Honor. Our construction was that it's a search designed to locate, and the claims use either a neighbor or a near neighbor, without comparing to all possible matches, i.e. all records in the reference data set, even if the search doesn't locate a neighbor or result a match. And so in your example, yes, a linear search where you start at one end and keep going would be an example of an exhaustive search. It's not necessarily the only type, but that is a possible type of exhaustive search. And it's distinguished from other types of searches in the specification, Column 9, Column 21, Column 22, where a search technology or a search approach is used that eliminates or avoids comparing the request to certain portions of the data set. And, of course, as the specification makes clear, the dictionary is a less-than-optimal example for purposes of discussing this technology because these are not the kinds of very ordered data sets that you're talking about with a dictionary where you have a listing of words in an alphabetical order that's very precise. The specification even says the search of a dictionary isn't a... Okay, this is the most invariable thing. There's a vector instead of just a straight binary thing. It's not that complicated. Well, maybe it is, but it doesn't seem that complicated. Anyway, but I guess what's not great for you is I still don't understand your precise argument, which, by the way, is really bad when the whole question is, is it indefinite? So I need to understand your precise argument. Is it that Column 9 and Column 22 articulate the differentiation between exhaustive on the one hand and non-exhaustive on the other? And, by the way, if you can't tell by the tone of my voice, this is a friendly question. I'm just going to put it out there for you. So it defines exhaustive and non-exhaustive in terms of whether you have to do an iterative, linear, stepwise approach starting at the beginning and moving along until you find the answer. What would be exhaustive? Examples of non-exhaustive searches, it seems to me, are KD tree, vantage point trees, clustering, hashing, you know, all of those things would be non-exhaustive because that would be a whole different way of trying to reduce the universe of things to look at and make your search more efficient. Is that an accurate characterization of how you think your patent appropriately defines exhaustive versus non-exhaustive? It is, Your Honor. And I think that the key there is that's how one of skill in the art would understand it. And that's something that comes through both from the specification itself but also from Professor Mitzenmacher's explanation of these different techniques and what differentiates them from one another. Mitzenmacher was a Mitzen mess for me. So I don't know where I want to go there. But also, I mean, don't you want to maybe focus on the claims? Because don't the claims do a little work of further defining what it means to be non-exhaustive? I mean, you mentioned the written description, but don't the dependent claims kind of help? Yes, indeed, Your Honor. The dependent claims, indeed, in some instances, reference things like a KD tree as the sort of as a dependent claim for that being the non-exhaustive search. And I think here the problem with this... Not just a KD tree. It walks through absolutely everything that was in Column 9 and Column 22 that differentiates between exhaustive and non-exhaustive. Sublinear, KD trees, vantage point trees, middle vantage point first, like it kind of goes through all those examples and it puts them in the bucket of these are the non-exhaustive. That's right, Your Honor. That's absolutely correct. And we do believe that that claim differentiation further illustrates and helps to lend to that clarity of what's being differentiated within the claims here. And I also think, to step back a little bit, the District Court's essential finding was one that I think is inconsistent with several of this Court's precedents, that essentially because there were a couple of possible, according to the District Court, constructions of the phrase, that rendered an indefinite. That's a reasoning that this Court rejected in Nevro, in Neonode, and it gets to a question of how is one of skill in the art understanding what's taught and what's disclosed in these claims and what's disclosed in specification, which is the kind of fact question that the Court has held precludes a summary judgment-like finding of indefiniteness. Can you help me understand what the difference is between non-exhaustive and sublinear? Give me an example of something that is sublinear but not non-exhaustive. So I don't think there could be a sublinear search that's not non-exhaustive. There could be a non-exhaustive search that is not sublinear. Sublinear would be a subset of non-exhaustive searches because you could have a non-exhaustive search that, for example, looked at every other record in a database, in a data set. Are these patents expired? They are, yes, Your Honor. They are exhausted. They are expired. But to finish my answer, if you looked at every other reference, if you looked at half the references, that would still scale in proportion to the size of the data set. It would be non-exhaustive, but it would not be sublinear. Does that answer your question? Yes. I'll reserve the rest of my time for rebuttal. I would like to address the Siberia system with a rebuttal. Mr. Trask. Good morning, and may it please the Court. Andrew Trask for Applease, Google, and YouTube. If the Court doesn't prefer otherwise, I'll start with the non-exhaustive terms since that was the focus of the argument of my colleague. So the question of indefiniteness is one of claim construction, ultimately, and it depends on the intrinsic and, if needed, extrinsic evidence. This Court, of course, evaluated the same intrinsic evidence in the prior IPR appeal involving the same specification. And the Court did not address the Phillips construction. That's certainly the case. But the Court did evaluate whether the specification drew a clear line between two reasonable constructions, whether an exhaustive search must examine all data and whether there is no  It did so in the context of BRI, and it expressly said it was not making any decisions on indefiniteness. I absolutely agree with that, Chief Justice Martin. I appreciate the language that you're pointing to in the prior opinion. I'm just not sure it prevents me from looking at the intrinsic evidence through the lens of a skilled artisan in this case. I mean, do you think it's I know it's been your position in part, but do you think it's the law of the case? Because even the district court found it wasn't in that giant long footnote number 12. Even he found that he was not bound that that prior decision of ours didn't actually reach any kind of binding decision on this. So are you saying it's the law of the case and I don't have a choice? I absolutely am bound by it because it's the law of the case.   I think it could do that. I think it would be appropriate the only proper course would be for the court to reach the same conclusion, however. And that's because the question is the same ultimately with respect to whether the specification draws a clear line between a non-exhaustive and exhaustive search with respect to how much data must be examined within each record. The passages that Your Honor focused on, columns 9 and 22, are the same passages that were the focus of this court's prior decision. And those passages do refer to specific types of searches. Linear searches, KD trees, vantage point trees. But nothing in those passages describes any of those searches as exhaustive or non-exhaustive as Judge Lawyer pointed out. But the claims do. The claims do, and the claims are part of the specification. The claims, these claims were 100% do. The claims expressly do. Claim 17, method of claim 15 wherein the non-exhaustive search is the linear. 18, the method of claim 15 wherein the non-exhaustive search is based on a KD tree. Claim 19, non-exhaustive, I could keep going. Clearly and unequivocally, Ty, and by the way, our prior decision didn't look at any of the dependent claims. Two points in response to that, Chief Judge Moore. So one is that the, first of all, just as a matter of fact, these claims were not part of the original specification. They were added years later. But more fundamentally, those dependent claims do not tell you, do not tell the person of ordinary skill how much data is enough for a search to be  Those dependent claims do specify types of searches that depend from an independent claim that recites a non-exhaustive search. But as to the key question here, which is the same question that this Court grappled with in the prior appeal, how much data is enough? How much do you have to examine for a search to be exhaustive? Well, I mean, doesn't Column 9 tell us? Like, it explains that at Column 9, Line 24, in previous work, it was not uncommon to form a linear search of n entries, perhaps halting the search when the first match is found. So that basically, and that says if n is large, this search would be computationally very expensive. Why isn't that on its face, the definition of exhaustive? Because when it says other forms of matching include, and it goes through all the ones that are clearly defined as non-exhaustive by the claims, the dependent claims. And that's kind of how, to be honest with you, that's kind of how I understood this spec when I read it, that they were defining exhaustive as the linear processing item by item of each and every item until you got to a match, not what he started to say when    whole n, because the whole n is the dictionary, but you wouldn't stop when you got to the word regular, you'd go all the way to whatever the last word is, you know, what the Z, whatever the Z word is, is last. So, you know, I think, but I think the spec does. So that's... I appreciate the question, Your Honor. I think there's two layers to this. One is what are the differences between, what searches are exhaustive versus non-exhaustive? And I understand Your Honor is saying that it could be read from the specification as to which is which. Specification doesn't say that, to be clear. It doesn't use the term. But even assuming that's right, there's a second layer to this. The second layer is that  could determine which searches qualify as exhaustive or non-exhaustive, it still doesn't tell the person of ordinary skill how much data within the particular search needs to be examined. So, for example, is a linear search of all n entries exhaustive or non-exhaustive if it only examines the first letter of each character is that an exhaustive or non-exhaustive search? There's nothing in the claims or column 21 or 22 anywhere else in the patent that answer that question. And that's why this is fundamentally an indefinite term. There's no guidance in the intrinsic record. I certainly understand the point that you're making now. But I mean, I think it says a linear search of n entries. I could be wrong. I'm not sure.     the next, even if you know your first letter is b. So an exhaustive search, it seems to me, is anything other than stepwise, entry by entry, all the way through n until you get to a match. between the parties here, Your Honor, as to how much of that entry needs to be examined. Is it just the a or the b or is it the entire entry, if it's a text string, for example? The example Your Honor gave doesn't answer that question. Well, that's just because you're getting to the difference between the simplicity of our example and the vector concept of what we're trying to  I'm staying with exhaustiveness, although I'm happy to pivot if Your Honor would prefer. But staying with the dictionary example that Your Honor raised, the expert from Network One Oh, trust me. can kind of stick around. And it's still an exhaustive search. I was exhausted reading it, so I don't have to look at extrinsic questions if I think the spec is clear. That's right. But let's look at Network One's argument that, for example, there's a number of papers that are part of the intrinsic record, the Yanolos papers and others. Those themselves are inconsistent about which is which. The Yanolos paper, which is the A1413, describes KD trees as performing a nearly exhaustive search, but again, in Network One's view, that's a non-exhaustive search. So even intrinsic evidence is all over the place here, Your Honor. There's no way to draw a line between the two, and that's exactly why the court has decided to   So let's look at  that, for example, there's a number of  of the intrinsic record, the Yanolos  And again, the Yanolos papers are all over the place. So let's look at the Yanolos papers, and   place. So let's look at the Yanolos    So let's take a look at the Yanolos papers in the context of the cite article on Siberia, and we're going to     happens in Siberia,   going to 10265. It's a planning document, but planning for Siberia. Oh, yes, Your Honor. And it says, it is clear we will need a customized distributed searching service and a sublinear search with hash representation. It is clear we will need. That doesn't mean Siberia for sure definitely has, but there's a question of fact, and there's a Google document in the planning phases to develop this, and this Google document said, we have to have a sublinear search. Why isn't that enough to create a question of fact about whether the ultimate system does have a sublinear? Because it's not evidence that the system as implemented works in a sublinear way under the party's construction. No, it says it has to have it, needs it. Not just like, hey, maybe let's think about implementing this. It needs it. It must have it. Well, this is one of two documents cited by Network One, and together, I think they both indicate that there were various ways that this system could have been designed, right? Even if that's true, question of fact, summary judgment. Question of fact, they've got a Google doc that says we're planning to develop the system. It has to have sublinear. Must have it. Question of fact. I think this Court's cases support the District Court's decision to District Court didn't address this document, and it was raised by them. I tracked it. It was raised. It was cited. District Court never addressed this document. Your Honor, this Court's case is presumed that the District Court analyzed the evidence presented by the parties. In the EPAS v. 3Com case, which is cited in the brief, there was similar evidence. There were internal documents with plans and proposals for how to implement the accused system, and the Court found that was not enough because it didn't demonstrate how the accused system actually functioned. So there was no genuine issue of material fact. This is no different from that. This is a planning document. It doesn't say anything about how the system was ultimately implemented. And as Network One's own evidence demonstrated, there were other ways that this system could have been implemented. There are various algorithms cited. None of the evidence actually demonstrates how the system was actually implemented, other than the agreement between the witnesses, which states which, by the way, is focused specifically on the accused system, and the parties agree that, as designed, it scales linearly. So the hypothetical possibility of that... I don't even understand that. I don't think the parties do agree that, as designed, it scales linearly. I think it was, in fact, designed to scale in a sublinear search fashion. I don't follow you at all. What about Kumar's testimony? Kumar's testimony, I don't think... It says the tree AH was used in the Siberia Content ID. Dr. Kumar explained that the tree AH algorithm is a category of algorithms. It's not one specific algorithm, and there's nothing... This is semi-judgment. We know that the tree... We know... This tells us that the tree AH is sublinear. Then we have... And that's a Google doc. Then we have a Google witness that says the tree AH is used in Siberia. How can that not be enough to survive semi-judgment? Dr. Kumar was not testifying about the document with that graph shown in it. Dr. Kumar was testifying about... It was Deposition Exhibit 7. That document's not even in the Joint Appendix because Network One never cites it on appeal. Network One... That document with the graph in it that refers to that algorithm was never shown to any witness in this case. It's simply pointed to by Network One, and there's testimony saying that the algorithms... The first... The bottom algorithm there, the expert... Their expert admitted at 6619 that Siberia does not use that algorithm. In the other algorithm, Dr. Kumar testified at A9289 that it's a category of algorithms and there's nothing tying the actual... But the jury can make an inference. But the jury can make an inference based on that, and that's all they have to do to survive semi-judgment. I don't think the jury can make a fair inference when Google's witness testified unequivocally, Dr. Pazula, A7536, do always search a fixed portion of the index of Siberia. And Network One's expert agreed with that point. The only way that they can argue sublinearity of Siberia is if it's... The system has changed, if parameters are changed. But that's not the... But they all even did it once, right? Like, didn't you all do it once? Didn't you admit that you even did this once? The system... The one parameter was changed, but there's no dispute that it nonetheless ran a linear algorithm. So here's my problem. Let's think of it like a radio station, right? You can turn the knob and you can go to different stations. And your system was designed to do that. It was designed to be able to turn the knob to go to different proportions. That's what it was designed to do. Your argument in your witness's testimony is when you turn the knob and you take your hand off the knob, from that point on, it's proportional. It's on only one station. There's only one radio station at that point in time, and so you're trying to step back and say, therefore, our system is not designed to allow you to hear multiple stations, because when we're not touching the knob, you can only hear the one that's playing. That is how I understand this case. So what's wrong with it? I see my red light on. May I answer? Mr. Trask, I'm asking you lots of questions. So just to be clear, and I'm sure this is clear to Your Honor, that the system itself doesn't have knobs. It's kind of a metaphor. You know that. It also doesn't involve a dictionary or to not present that. That's all correct. What's actually happening here when that parameter is changed is a human engineer is going into the code and changing the code so that there's a different system. Now, that different system is also linear, because as Dr. Pizzura testified, the system always scans a fixed portion of the index. But the system is expressly designed to allow it to be modified. That was an important component of it. I don't know. I have no problem with you guys winning at trial, but really just... This case is similar, in fact, easier, I think, than the Telemac versus Top case, which is one of these cases about modifying the system. So that was a case where the source code included infringing functionality, but it wasn't enabled. And this court said, well, because you'd have to enable that functionality, summary judgment of non-infringement was appropriate. Here, this case is easier, because there is no code. Networkman is pointing to no code demonstrating why the system would necessarily grow. In fact, at page 50 of their blue brief, Networkman admitted that their expert, quote, was not generally opining that the number of elements examined would necessarily grow with any increase in reference size. So that's an admission that the system as designed does not grow together with the size of the reference index. This is a, if anything, a human-implemented change, but it doesn't change the algorithm from the standpoint of being a linear algorithm. I didn't get to the LSH system at all, and I'm certainly out of time at this point, so if no other... Well, we obviously stand on the briefing there with respect to why that system doesn't infringe as well, and summary judgment is appropriate. So for all the reasons explained in the briefing and today, I'd urge that the Court affirm the District Court's judgment. Thank you, Mr. President. Well, I wouldn't spend a lot of time on Siberia, because I think Your Honor made many of the points I wanted to raise in your questions, and I'm happy to address the reverse of those if you'd prefer, but I do think that the Court correctly described that there was a document the District Court didn't address that clearly said it was unnecessary. Why don't you address where the tunable knob makes this whole system sublinear? Well, Your Honor, sublinearity refers to how the system functions as you change the size of the data set. So it's not really overly looking at a single search, it's how it scales. The computation resources don't increase at a proportional rate to the size of the data set increasing. And that's exactly what these tunable knobs are addressed to, is scaling the system so that the system is adjustable as it grows to maintain the sublinearity of the computation resources, and as we pointed out, as I think Your Honor's question raised, Google in fact did do exactly what was postulated. In order to save resources. Exactly, and that was the admission. Exactly. They did it in order to save resources, so your argument, I think, is why would it be unreasonable for a jury to infer the system was designed to allow someone to tune it to save resources? That's exactly correct, Your Honor. That's a perfectly reasonable inference. I understand Google can argue a different inference, but we submit that the district court can't resolve that question on summary judgment. And I think that's the error here, is stepping across that line to weigh the different possible inferences and to pick one as opposed to acknowledging that that's a reasonable inference that a jury could draw. And I think the same problem applies to the LSH system. I cited one of the pieces of evidence, there were other documents and other pieces of Google material that made clear that the LSH system was also sublinear. I don't think you have such a good case on that. So you can either spend your time on that or you can touch on exhaustive, because you've got like a minute. I mean, I'll give you a minute or so extra because Mr. Trask had extra, but you can choose to. Sure. So I mentioned Dr. Belushi's testimony that LSH systems and LSH algorithms are, by their nature, sublinear. Dr. Belushi said that an LSH system uses what's called an inverted index, and the property of such an inverted index is that it is a sublinear data structure. Google also had produced a document about an addition to the LSH system called Covercat. And that addition was to use functionally the same basic approach, the same basic matching system, and in fact the document said Is this that document you all never cited to the district court at all during the summary judgment proceedings? It was cited to the district court, Your Honor. Matthew? Was it cited to the district court during the summary judgment? It was cited. Okay. Keep going. In that document, Your Honor, Google wrote that that system that was being added follows the same high-level architecture as the content ID fingerprint system. That's at page 9380. And it also stated that where there are diversions from content ID, they're going to be noted in the document. That's at page 9382 of the appendix. And then it goes on to explain that the LSH system scales in a sublinear fashion at page 9387. The district court suggested there was a way to read that document that it maybe could be understood not to apply to the system as implemented. We submit that, first of all, that's not the proper inference from the document, but it's certainly not the only inference that can be drawn from a document like that. And where that's I think the big difference between this and the Siberia case for me is you don't have a document like you did at 10-265 where Google said this is necessary. We have no idea whether Google implemented in the LSH area what we have for Siberia that they say necessary. Gotta have this. Gotta have this in Siberia. Bring your parka. I think the distinction is, Your Honor, that with LSH, sublinearity is a property of LSH is a category of search. And categorically, that kind of search is sublinear in all instances. That's what Google's witnesses testified to, like Dr. Berugia. That's what the documents show. And lest there have been any confusion, Professor Mitzemacher also looked at the implementation and their source code to confirm that there was nothing about it that changed that in some way in the implemented system. But the testimony at a minimum can be understood to be that all LSH systems are sublinear. And the district court had to at least credit that as a reasonable inference to draw from the evidence. Okay. I thank both counsels. This argument is taken under submission.